*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT BANKER, SR.,

      Plaintiff/Counterdefendant-Appellee,

v

CITIZENS UNITED RECIPROCAL EXCHANGE
d/b/a CURE AUTO INSURANCE,

      Defendant/Counterplaintiff/Third-
      Party Plaintiff-Appellant,

and

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

      Defendant-Appellee,

and

ASCENSION PROVIDENCE HOSPITAL,
MEDICAL DEVICE SPECIALTY INC., and
MICHIGAN SURGERY SPECIALISTS,

      Third-Party Defendants,

and

SURGEONS CHOICE MEDICAL CENTER,

      Third-Party Defendant-Appellee.

UNPUBLISHED
August 10, 2026
11:08 AM

No. 374356
Wayne Circuit Court
LC No. 23-004606-NF

Before: LETICA, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

-1-

Defendant/counterplaintiff/third-party plaintiff, Citizens United Reciprocal Exchange, doing business as CURE Auto Insurance, appeals as of right a consent judgment in which CURE reserved the right to challenge the trial court's earlier orders denying CURE's motion for summary disposition and granting the motion for summary disposition filed by defendant, Allstate Property and Casualty Insurance Company (Allstate). CURE argues that the trial court erred by denying CURE's motion for summary disposition because, plaintiff/counterdefendant, Robert Banker Sr. aided nonparty Robert Banker. Jr. in fraudulently procuring a policy from CURE, so Banker Sr. should not be considered an innocent third party. Agreeing with the trial court that there is no evidence that Banker Sr. committed any fraud in procuring the policy, we affirm.

## I. BACKGROUND

At all relevant times, Banker Jr. lived with his mother, Theresa Banker and Banker Sr. Banker Jr. owned a 1999 Jeep Cherokee and a 2000 Jeep Cherokee. Banker Sr. primarily drove the 2000 Jeep. Banker Jr. applied for an auto insurance policy with CURE for both of his vehicles on December 16, 2022. According to Banker Jr., Banker, Sr. "told [him] to make sure [he] got insurance" on the 2000 Jeep, but Banker Sr. was not present when Banker Jr. applied for the insurance and did not provide Banker Jr. with any information, though Banker Sr. was aware that Banker Jr. had applied for the policy.

In the application, CURE required Banker Jr. to list "[a]ll household members . . . as potential drivers or residents," but Banker Jr. listed only "Robert Banker"[1]; he did not include Banker Sr. or Theresa. Upon receiving Banker Jr.'s application, CURE issued him a policy that listed "Robert Banker" as named insured. On the same day that Banker Jr. submitted his application, CURE sent a letter to him requesting that he notify CURE if the list of household members in his application was not accurate. Banker Jr. never responded to this request.

On December 30, 2022, Banker Jr. asked Banker Sr. to call CURE to take the 2019 Jeep off the CURE policy and add a recently purchased 2016 Jeep Cherokee to the policy. During the phone call,[2] Banker Sr. told the CURE representative that he was "trying to transfer one vehicle off my policy and put[] another one on." He provided the policy number, then stated the policyholder's name was "Robert Eugene Banker." After Banker Sr. gave an e-mail address different than the one CURE had on file, Banker Sr. said to "leave [the e-mail address] like it is," adding, "I'm just doing it for him cause he's at work." Banker Sr. asked to remove the 1999 Jeep from the policy, then provided vehicle information for the 2016 Jeep. When the CURE representative asked how the 2016 Jeep would be used, Banker Sr. said that "he's just gonna be using it to drive to work." When the CURE representative asked if the 2016 Jeep would be titled

---

[1] Banker Jr. listed his birthdate as the birthdate of the "Robert Banker" identified in the application.

[2] CURE filed a recording of this phone call with this Court. Banker Sr. and Allstate argue this Court should not consider the recording because CURE did not file it in the trial court. Although the electronic file of the recording is not part of the lower court record, CURE indicated that it included the recording with its motion for summary disposition in the trial court, and the recording is indeed identified as an exhibit in that filing. We therefore consider the recording part of the lower court record and address its content on appeal.

under "your name," Banker Sr. said yes and identified the owner as "Robert Banker." When the CURE representative asked about how the vehicle was being financed, Banker Sr. had the CURE representative wait while he called Banker Jr. to ask for that information, then provided it to the CURE representative.

On January 6, 2023, Banker Sr. was driving the 2000 Jeep when another vehicle failed to yield and hit the 2000 Jeep head on. CURE received a claim for PIP benefits from "Robert Banker" on January 8, 2023. CURE ran a search and identified Banker Sr. and Theresa as possible household members that were not listed on the policy, which prompted CURE to send another letter to Banker Jr. inquiring about his household members. Banker Jr. again did not respond, and CURE later identified Banker Sr. as the PIP claimant and a member of Banker Jr.'s household.

CURE refused to pay Banker Sr.'s benefits, prompting Banker Sr. to file this action. CURE then sent Banker Jr. a letter declaring his policy "void from the date of inception" because Banker Jr. fraudulently obtained the policy by misrepresenting his household members in the application. Banker Sr. then applied for benefits through the Michigan Assigned Claims Plan, which assigned Banker Sr.'s claim to Allstate, who was added as a party to this action. CURE was also allowed to file a third-party complaint against Ascension Providence Hospital, Michigan Surgery Specialists, Medical Device Specialty Inc, and Surgeons Choice Medical Center (collectively the third-party-defendant providers), who all treated Banker Sr. following the collision.

CURE and Allstate eventually filed competing motions for summary disposition under MCR 2.116(C)(10). Allstate argued that CURE was the higher-priority insurer responsible for paying Banker Sr.'s benefits because CURE had a policy with Banker Jr., and Banker Sr. was Banker Jr.'s resident relative. Allstate recognized that CURE had rescinded its policy with Banker Jr. on grounds that Banker Jr. engaged in fraud when procuring the policy, but Allstate contended that this rescission should not extend to Banker Sr. because he was an innocent third party and the equities weighed against rescission. In its competing motion, CURE argued that it was entitled to rescind its policy with Banker Jr. as a matter of law, and that this rescission should be extended to Banker Sr. because the equities weighed in favored doing so. As part of the latter argument, CURE contended that Banker Sr. was not only aware of Banker Jr.'s fraud but "took an active role" in it by instructing Banker Jr. to purchase insurance for the 2000 Jeep and by calling CURE to add the 2016 Jeep to Banker Jr.'s policy without adding himself to the policy as a household member. CURE asserted that Banker Sr.'s involvement in—or at the very least knowledge of—Banker Jr.'s fraud weighed heavily in favor of extending the rescission of Banker Jr.'s policy to Banker Sr.

At the hearing on the parties' competing motions, CURE's counsel again emphasized Banker Sr.'s alleged involvement in Banker Jr.'s fraud, arguing that this weighed heavily in favor of extending the rescission of Banker Jr.'s policy to Banker Sr. The other parties at the hearing pushed back against this argument, noting that Banker Sr. was not involved in procuring the policy, and that Banker Sr. said nothing amounting to fraud in his phone call with CURE. The trial court ruled that there was no evidence that Banker Sr. engaged in "pre-procurement" fraud, and the only evidence that CURE had produced showed that Banker Sr. "did not properly disclose who he was" in a phone conversation with a CURE agent after the policy was procured. The court believed that some of Banker Sr.'s statements "may have been fraudulent," but the court reiterated that these statements were not made "in the procurement of this policy." The court thus concluded that Banker Sr. was an innocent third party, so it had to weigh the equities to determine whether

CURE's policy should be rescinded with respect to Banker Sr. Doing so, the court concluded that the equities weighed against rescission,[3] so it denied CURE's motion for summary disposition and granted summary disposition to Allstate. The court did not believe that the rescission issue with respect to the third-party-defendant providers had been adequately raised, so it clarified that its ruling did not apply to them. After the hearing the trial court issued two orders—one order denied CURE's motion for summary disposition, the other granted Allstate's motion for summary disposition and dismissed Allstate from the case. Neither order was a final order, and the case remained open.

Eventually, CURE, Banker Sr. and the third-party-defendant providers entered into a consent judgment on January 21, 2025. In this consent judgment, CURE reserved the right to appeal the trial court's earlier orders denying CURE's motion for summary disposition and granting Allstate's motion for summary disposition. This was a final order that closed the case.

This appeal followed.

## II. STANDARD OF REVIEW

CURE on appeal contests the trial court's ruling on competing motions for summary disposition. Appellate courts review de novo a trial court's ruling on a motion for summary disposition. *Sherman v Progressive Mich Ins Co*, ___ Mich ___, ___; ___ NW3d ___ (2026) (Docket No. 167826); slip op at 9. CURE and Allstate moved for summary disposition under MCR 2.116(C)(10). When a party files a (C)(10) motion, if there are no genuine issues of material fact, then the trial court may rule that the moving party is entitled to judgment as a matter of law. See *Sherman*, ___ Mich at ___; slip op at 9. If the moving party requests rescission, then the trial court's decision to grant or deny that relief is reviewed for an abuse of discretion. *Id*. at ___; slip op at 9-10.

## III. ANALYSIS

CURE contends that the trial court erred by denying its request to extend the rescission of Banker Jr.'s policy to Banker Sr. because Banker Sr. aided in fraudulently procuring the policy. This, according to CURE, rendered a weighing of the equities improper because Banker Sr. was not an innocent third party.

In *Bazzi v Sentinel Ins Co*, 502 Mich 390; 919 NW2d 20 (2018), our Supreme Court clarified that an insurance policy could be rescinded with respect to an innocent third party, *id*. at 407, but held that such a rescission could only be effectuated if a court, in its discretion, found that the equities favored extending rescission of the policy to the innocent third party, *id*. at 409-411. Since *Bazzi*, this Court has clarified that an individual who "participate[s] in the fraudulent procurement of [an] insurance policy . . . cannot be considered an innocent third party, and the trial

---

[3] As part of its ruling, the court found that, while Banker Sr. was close with his son, there was no evidence that Banker Sr. aided in fraudulently procuring the policy. The court thus concluded that the factor considering the innocent third party's knowledge of the fraud weighed against rescinding the policy.

court need not engage in any balancing of the equities" in order to rescind the policy with respect to the party who engaged in fraud. *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 512-513; 967 NW2d 841 (2021).

CURE argues that there is no question of fact that Banker Sr. helped fraudulently procure Banker Jr.'s policy, so the trial court erred by balancing the equities to determine whether to rescind the policy with respect to Banker Sr. We agree with the trial court, however, that the opposite is true—there is no evidence whatsoever that Banker Sr. participated in fraudulently procuring the policy from CURE. Banker Jr. testified that he procured the policy on his own without Banker Sr.'s involvement. Banker Sr. admitted that he was aware that Banker Jr. procured the policy, but he never indicated that he was involved in actually applying for or otherwise procuring the policy. While it is true that Banker Jr. testified that Banker Sr. "told [him] to make sure [he] got insurance" on the 2000 Jeep, nothing about this suggests that Banker Sr. engaged in any fraud; he did not, for instance, instruct Banker Jr. to not list him as a household member on the policy. Again, the record evidence establishes that Banker Jr. procured the policy on his own without Banker Sr.'s aid.

CURE contends that because Banker Sr. directed Banker Jr. to procure the policy, Banker Jr. was acting as Banker Sr.'s agent when procuring the policy, so Banker Jr.'s fraud can be imputed to Banker Sr. as Banker Jr.'s principal. This argument was not raised below, however, so it is waived. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 294; 14 NW3d 472 (2023). CURE claims that this issue is preserved because CURE argued below that Banker Sr. "was not an innocent third party to the fraud." That is true, but CURE argued below that Banker Sr. was not an innocent third party because he "took an active role" in fraudulently procuring the policy. CURE never argued that Banker Sr. was not an innocent third party because Banker Jr. was acting as Banker Sr.'s agent when Banker Jr. fraudulently procured the policy. The latter argument is not simply a more sophisticated argument of the former one—they are two separate arguments, and because CURE only raised the former argument below, the latter argument is waived on appeal.

CURE alternatively argues that Banker Sr. helped obtain Banker Jr.'s policy through fraud because, when Banker Sr. added the 2016 Jeep to the policy, CURE and Banker Jr. effectively agreed to a new contract with new terms. While CURE recognizes that parties are free to amend their agreements, CURE fails to explain why adding the 2016 Jeep to Banker Jr.'s policy did not amend the parties' contract but created a new one. CURE observes that there can be no amendment without mutuality of agreement, and it contends that there can be no mutuality "when one party is lying in the amendment process." It is unclear, however, how this relates to CURE's argument that adding the 2016 Jeep to Banker Jr.'s policy created a new policy. If Banker Sr. engaged in fraud to amend the policy, then, presumably, that amendment would not be effective. But that does not establish that CURE issued a new policy or that Banker Sr. somehow engaged in fraud when the policy was originally procured.

In a four-sentence paragraph, CURE also contends that even if Banker Sr. was considered an innocent third party requiring "the equites [to be] balanced, they would inevitably weigh in favor of CURE" because Banker Sr. engaged in fraud while CURE was an innocent insurer. When balancing the equities, the trial court engaged in a lengthy analysis in which it carefully walked through the various factors that it considered when deciding whether equity favored rescinding

Banker Jr.'s policy as to Banker Sr.[4] As part of its analysis, the court explicitly acknowledged that Banker Sr. may have engaged in fraud after the policy was procured, but the court concluded that because Banker Sr. did not participate in fraudulently obtaining the policy, Banker Sr.'s purported fraud did not favor rescinding the policy as to him.[5] The court then considered a number of other factors, several of which it found weighed against rescinding the policy as to Banker Sr., before ultimately concluding not to extend rescission of CURE's policy to Banker Sr. CURE on appeal does not address any of the factors that went into the trial court's ruling, even its analysis of Banker Sr.'s purported fraud. "When an appellant fails to dispute the basis of the trial court's ruling, this Court need not even consider granting plaintiffs the relief they seek." *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004) (quotation marks, citation, and alteration omitted).

Lastly, CURE raises two arguments with respect to the third-party-defendant providers: (1) that a medical provider's claim for no-fault benefits is derivative of the insured's claim, so *Mota-Peguero v Falls Lake Nat'l Ins Co*, 350 Mich App 692; 33 NW3d 912 (2024)—which held that a medical provider's claim for benefits was *not* derivative of the insured's claim—was wrongly decided, and (2) that if a medical provider's claim for no-fault benefits was not derivative of an insured's claim, then this Court should adopt new factors that trial courts can consider when deciding whether to extend rescission of a no-fault policy to an innocent-third-party medical provider. We decline to address either argument because we do not have jurisdiction over CURE's claims against the third-party-defendant providers.

At the hearing on CURE's motion for summary disposition, the trial court explicitly declined to rule on the rescission issue with respect to the third-party-defendant providers, concluding that CURE had not adequately raised the issue in its motion. CURE's claims against those providers therefore remained unresolved after the trial court entered its orders granting Allstate's motion for summary disposition and denying CURE's motion for summary disposition. CURE's claims against the third-party-defendant providers were not resolved until CURE entered into the final consent judgment and agreed to have its case dismissed. It follows that, with respect to the third-party-defendant providers, CURE was not "aggrieved" within the meaning of MCR

---

[4] In *Farm Bureau Gen Ins Co of Michigan v ACE American Ins Co*, 503 Mich 903, 906-907; 919 NW2d 394 (2018) (MARKMAN, C.J., concurring), then-Chief Justice MARKMAN identified five factors that courts could consider when deciding whether equity favored rescinding an insurance policy with respect to an innocent third party. This Court adopted these so-called MARKMAN factors in *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 411; 952 NW2d 586 (2020), abrogated on other grounds by *Sherman*, ___ Mich at ___; slip op at 9-10. The trial court applied the MARKMAN factors when deciding whether to extend the rescission of Banker Jr.'s policy to Banker Sr.

[5] The court provided this analysis as part of its consideration of the second MARKMAN factor, which looks to "the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud." *Pioneer*, 331 Mich App at 411. CURE never argues that the trial court erred in its consideration of this factor (or any other factor). We therefore decline to address whether the trial court properly considered whether Banker Sr. had knowledge of Banker Jr.'s fraud when it considered the second MARKMAN factor.

7.203(A)—the court rule governing this Court's jurisdiction—by any ruling with respect to the third-party-defendant providers. CURE's only claims against the third-party-defendant providers were resolved in the final consent judgment, and any injury that CURE suffered as a result of the consent judgment was the result of CURE's decision to agree to the judgment, not by any action taken by the trial court. See *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292; 715 NW2d 846 (2006) (explaining that to be "aggrieved" within the meaning of MCR 7.203(A), the appealing party "must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment"); *Sauer v Rhoades*, 338 Mich 679, 681; 62 NW2d 634 (1954) (explaining that a party cannot appeal from a consent judgment because the judgment reflects the judgment of the parties, not of the court).

Affirmed.

/s/ Anica Letica
/s/ Colleen A. O'Brien
/s/ James Robert Redford